RENDERED: SEPTEMBER 28, 2017
TO BE PUBLISHED

## Supreme Court of Kentucky

FINAL

2015-SC-000664-TG

DATE 10/9/17 Kim Redmon, DC

BOARD OF TRUSTEES OF THE KENTUCKY                    APPELLANT
SCHOOL BOARDS INSURANCE TRUST


ON REVIEW FROM COURT OF APPEALS
V.                      CASE NO. 2015-CA-001682-TG
FRANKLIN CIRCUIT COURT NO. 14-CI-01080


JOSEPH N. POPE, JR. DEPUTY                           APPELLEES
REHABILITATOR OF THE KENTUCKY
SCHOOL BOARDS
INSURANCE TRUST WORKERS'
COMPENSATION SELF-INSURANCE FUND;
JOSEPH N. POPE, JR., DEPUTY
REHABILITATOR OF THE KENTUCKY
SCHOOL BOARDS
INSURANCE TRUST PROPERTY AND
LIABILITY SELF-INSURANCE FUND; AND
KENTUCKY ASSOCIATION OF COUNTIES,
INC.


**OPINION OF THE COURT BY JUSTICE VENTERS**

**AFFIRMING**


Appellant, Board of Trustees of the Kentucky School Boards Insurance

Trust (KSBIT), appeals from a decision of the Franklin Circuit Court rejecting

its claim of governmental immunity and thus denying its motion for summary

judgment. Appellee, Joseph N. Pope, Jr., is the Deputy Rehabilitator of the

Kentucky School Boards Insurance Trust Workers' Compensation Self-

Insurance Fund and the Deputy Rehabilitator of Kentucky School Boards Insurance Trust Property and Liability Self Insurance Fund.

The circuit court concluded that the KSBIT Board is not entitled to governmental immunity because its "parent" entity is not an agency of state government that enjoys governmental immunity and it does not perform a function that is integral to state government. The KSBIT Board appealed the circuit court's decision to the Court of Appeals. We granted Appellee's uncontested CR 74.02(2) motion to transfer this case directly to this Court. Upon review, we agree that the KSBIT Board does not qualify for governmental immunity and so we affirm the Franklin Circuit Court's order denying summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Board of Trustees of the Kentucky School Boards Insurance Trust manages the self-insurance funds established to provide workers' compensation insurance and property and liability insurance to local public school districts that are members of the Kentucky School Board Association (KSBA). Prior to the involvement of the Deputy Rehabilitator, KSBIT's responsibilities included the collection and management of the Trust's funds, which are comprised of member contributions, policy dividends, and rate refunds; investments and income thereon; and other money and property in the hands of the Trust in connection with its administration. KSBIT also performed other duties required in the administration of the Trust. KSBA

2

served as the administrator of KSBIT providing the day-to-day management of the KSBIT funds until 2010.

Two of KSBIT's self-insurance funds, the Workers' Compensation Fund and the Property and Liability Fund, operated at a deficit for many years. Eventually, the Kentucky Department of Insurance stepped in and directed KSBIT to cure the deficits or assess its member school boards additional fees to balance its accounts. In response, KSBIT entered into agreements with the Kentucky League of Cities (KLC) and the Kentucky League of Cities Insurance Services Association (KLCIS) to borrow money and to transfer the administration of the KSBIT funds to those entities. Despite these efforts, the financial condition of KSBIT's insurance funds continued to deteriorate. KSBIT wrote its last insurance policy during the 2012-2013 fiscal year. In the latter part of 2013, KLC/KLCIS and KSBIT filed a declaratory judgment action asking the Franklin Circuit Court to force the Department of Insurance to assess KSBIT's members for the additional money needed to overcome the deficits and repay the KLC/KLCIS loan. Ultimately, the Franklin Circuit Court placed the KSBIT Funds into rehabilitation.[1]

The Deputy Rehabilitator filed suit against the KSBIT Board for negligence, negligence per se, breach of fiduciary duty of diligence and due

---

[1] The Deputy Rehabilitator assessed KSBIT group members an amount in excess of $45 million to fill the KSBIT Funds' financial deficit. The assessment did not include the approximately $8 million worth of notes from KLC/KLCIS. The Franklin Circuit Court has since ruled that the notes were not subject to repayment.

care, and breach of fiduciary duty of loyalty.[2] The KSBIT Board asserted a defense of governmental immunity and moved for summary judgment. After applying the two-prong test expounded upon in *Comair, Inc. v. Lexington-Fayette Urban County Airport Corp.*, 295 S.W.3d 91 (Ky. 2009), the circuit court concluded that KSBIT did not qualify for governmental immunity. Specifically, the circuit court determined that KSBIT was created by KSBA, a non-governmental entity. Since KSBA had no governmental immunity, its progeny KSBIT could not have immunity under the *Comair* test. The circuit court held under the second prong of the *Comair* analysis that KSBIT's purpose of maintaining a self-insurance trust fund to provide its member organizations (local school boards) with workers' compensation and other insurance was not a function integral to state government. This appeal followed.

On appeal, KSBIT asserts that the circuit court's *Comair* analysis was flawed for these reasons: 1) because the language of the Agreement and Declaration of Trust that established KSBIT reveals that its true "parent" organization is not KSBA, as the circuit court found, but is instead the several local school districts that comprise KSBA and opted to participate in KSBIT's insurance programs, and those member school districts do have governmental immunity; and 2) because KSBIT's function of providing local public school districts with statutorily-mandated workers' compensation insurance and

---

[2] KSBA and Kentucky League of Cities are co-defendants in the still-pending circuit court action but are not parties to this interlocutory appeal.

4

property insurance advances the governmental function of public education and is, therefore, a function integral to state government.

For reasons set forth below, we affirm the decision of the Franklin Circuit Court.

## II. ANALYSIS

In *Comair*, this Court sifted through and digested decades of decisions illustrating Kentucky courts' struggle to apply the concept of governmental immunity to public and quasi-public agencies outside the fundamental departments of state government. We concluded that two elements are decisive. The first element is whether the entity in question was created by a governmental agency that enjoyed the cloak of governmental immunity. "This inquiry can be as simple as looking at the 'parent' of the entity in question, i.e., was it created by the state or a county, or a city?" 295 S.W.3d at 99. The second element is whether the entity in question exercises a function that is "integral to state government." *Id.* (citing *Gross v. Kentucky Board of Managers of World's Columbian Exposition*, 49 S.W. 458, 459 (Ky. 1899); *Kentucky Center for the Arts v. Berns*, 801 S.W.2d 327, 332 (Ky. 1990)).

*Comair*'s adaptation of a two-pronged test is consistent with our historical application of governmental immunity and it has proven to be a workable solution to a complex and often confusing issue as seen, for example, in *Kentucky River Foothills Development Council, Inc.* v. *Phirman*, 504 S.W.3d 11 (Ky. 2016), and in *Coppage Construction. Co. v. Sanitation District No. 1*, 459

5

S.W.3d 855 (Ky. 2015). Our review accordingly proceeds with an examination of the two elements as they relate to KSBIT.

## A. The KSBIT Board was not created by local public school boards.

The KSBIT Board argues on appeal that it is immune from the claims of the Deputy Rehabilitator because it was created by local public school boards which have traditionally and undisputedly enjoyed governmental immunity. The KSBIT Board claims to have inherited the governmental immunity of its "parent" agencies. The irony is inescapable: KSBIT claims to have inherited the governmental immunity of the local public school boards whose insurance trust funds the rehabilitator claims KSBIT negligently mismanaged. KSBIT posits no other entity as its progenitor, and so if it was not created by local public school boards, it fails the first prong of the *Comair* test.

The Deputy Rehabilitator claims that the parental entity of the KSBIT Board is not the local public school districts who self-insured through the KSBIT trust, but is instead the Kentucky School Board Association (KSBA). KSBA is a private 501(c)(4) non-profit corporation. According to its articles of incorporation, membership in KSBA is open to public school districts in Kentucky as well as privately funded schools and colleges in the state with interests and views consistent with KSBA's objectives and purposes. One of KSBA's stated purposes is to assist its members in meeting "legal requirements for the efficient delivery of educational services to the public." Obtaining workers' compensation coverage for school employees and property insurance

6

for school property are among the legal requirements of local public school boards. See KRS 342.340, KRS 160.105.

The KSBIT Board was established in 1978 upon the execution of the Agreement and Declaration of Trust (Trust Agreement). The founding parties identified in clause 1 of the Trust Agreement[3] are: KSBA, seven named individuals to serve as Trustees, and the Trust itself. None of the individual public school boards or school districts that comprise the KSBA membership or participate in KSBIT's insurance programs are mentioned in the Trust Agreement.

The Trust Agreement notes, in clauses 2 and 3 of the preamble, that "boards of education in Kentucky are authorized to join together in a group or groups for the purpose of providing self-insurance of various kinds" and that some members of KSBA "may deem it expedient to join together in purchasing and procuring insurance coverage of various kinds or providing self-insurance."

Clauses 4 and 5 of the Trust Agreement preamble declare that KSBA is "undertaking to furnish the leadership and guidance necessary to establish such [insurance] programs" and that "the most practical manner in which to establish and administer these [insurance] programs is through a Trust created for that purpose."

---

[3] Clause 1 of the Trust Agreement states: "This AGREEMENT AND DECLARATION OF TRUST made . . . by and between the Kentucky School Boards Association (hereinafter referred to as 'KSBA' or 'Association') and [seven named individuals] as duly appointed Trustees (hereinafter referred to collectively as 'Trustees') and the Kentucky School Boards Insurance Trust (hereinafter referred to as 'Trust'), WITNESSETH:"

7

Article III of the Trust Agreement states the purpose of KSBIT

shall be: (1) to enable school districts and other tax supported
educational agencies of Kentucky who are members of the
Association, to avail themselves of the benefits which will accrue to
them in the forming of a group or groups to provide self-insurance
of various kinds or procure permitted insurance coverages of all
kinds; and (2) to provide risk management services.

The trial court provided two reasons for determining that KSBA, rather than the local public school board's members, is KSBIT's parent organization. First, the Trust Agreement language creating KSBIT directly identifies KSBA, rather than the individual member school districts, as the entity undertaking the task of creating KSBIT. Second, pursuant to the agreement, it is KSBA that appoints the KSBIT trustees, three of whom must be the president, immediate past president and vice-president of KSBA.

The KSBIT Board acknowledges that individual public school boards are not actual parties to the Trust Agreement. The Board challenges the trial court's reasoning by pointing out, based upon the language of the Trust Agreement, that in creating KSBIT, KSBA was acting on behalf of, and through the authority of, its member school boards. KSBIT also notes that Article X of the Trust Agreement explicitly provides that "the Trust is operated . . . as agent and representative of the participating members only."

We examine the genesis of KSBIT to ascertain its "parental" entity beginning upon the same path followed by the trial court: the Trust Agreement which created KSBIT. The Trust Agreement is a contract, and is therefore subject to the rules of contract construction. In interpreting a contract, we

8

first determine as a matter of law whether the contract is ambiguous. A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms. *New York Life Ins. Co. v. Conrad,* 107 S.W.2d 248, 250-251 (Ky. 1937).

> In the absence of ambiguity, . . . a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence. A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations.

*Kentucky Shakespeare Festival, Inc. v. Dunaway,* 490 S.W.3d 691, 694-695 (Ky. 2016) (citations and quotations omitted).

The terms of the Trust Agreement cited to show whether KSBA or the public school boards being insured through KSBIT are the true progenitors of KSBIT are not ambiguous. The plain language of the Trust Agreement that created KSBIT identifies only KSBA, KSBIT, and the Trustees. If the Trust Agreement can be regarded as KSBIT's birth certificate, then those parties are the parents. The language of the Trust Agreement also clearly expresses KSBA's leadership in undertaking to create KSBIT. The fact that it did so as a service to its members does not equate its actions to the actions of individual public school boards. KSBA is not the *alter ego* or the surrogate of its members, and so KSBA's action upon the Trust Agreement, "undertaking to furnish the leadership and guidance necessary to establish such [insurance] programs," cannot be attributed as the action of the many local school boards that comprise its membership.

9

The Trust Agreement significantly fails to mention any public school board as a creator of the Trust. The document is not executed by any local public school board. Of even more significance is the fact that the member school boards have no inherent right to participate in KSBIT's insurance programs. The Trust Agreement requires local public school boards to apply for and gain acceptance to participate in KSBIT's insurance programs. It is difficult to conceive that local school boards having no right to participate in KSBIT are the entities that created KSBIT.

The Trust Agreement's plain and unambiguous language reveals that KSBA, an incorporated legal entity, created KSBIT for the benefit of its members. The fact that KSBIT was created *for* local public school boards does not go so far as to establish that KSBIT was created *by* local public school boards. No plausible reading of Trust Agreement supports the assertion that KSBA's school board members created KSBIT.

Regardless of the terms of the Trust Agreement, the KSBIT Board asserts that because the *res* of the insurance trusts was funded by payments of participating school boards using state-appropriated monies, those participating school boards must be regarded as KSBIT's "parents" for purposes of immunity analysis. KSBIT cites *Franklin County v. Malone*, 957 S.W.2d 195 (Ky. 1997),[4] as support for this argument.

---

[4] Overruled on other grounds by *Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001).

10

In *Malone*, an inmate at the Franklin County Jail committed suicide. The inmate's estate filed suit against several governmental entities including Franklin County, the members of the Franklin County Fiscal Court, various other Franklin County officials, the Commonwealth of Kentucky, and a state trooper. Against the backdrop of negligence claims, the estate claimed that Franklin County's participation in a self-insurance fund to cover liability claims[5] against the county constituted a waiver of its claim to governmental immunity. Rejecting the plaintiff's arguments, this Court held that "participation in a self-insurance fund is not an implied waiver of immunity" and that "[p]articipation in a self-insurance fund pursuant to an inter-local cooperation act does not give rise to an implied waiver of sovereign immunity." *Id.* at 203-204.

With respect to a waiver of immunity, in *Malone* this Court distinguished the expenditure of county money to pay the premium for a commercial liability insurance policy from the contribution of county money into a self-insurance trust fund. *Id.* at 204. The KSBIT Board relies upon that distinction to support its claim of immunity.

The KSBIT Board's reliance upon *Malone* is misplaced. We are mindful that the instant case does not involve any claim of negligence or wrongdoing by a local public school board; the claim here is directly against the KSBIT Board

---

[5] The specific self-insurance trust involved was the Kentucky All Lines Fund operated by the Kentucky Association of Counties authorized pursuant to KRS 65.150(3) under the authority of KRS 65.210 *et seq.*, the Inter-local Cooperation Act.

11

for its alleged mismanagement of the Trust. We see nothing in *Malone* that remotely suggests that, as the repository of the self-insurance funds, the KSBIT Board cannot be sued for mismanaging the funds because it has the same governmental immunity as the public entities contributing funds it oversees.

Moreover, *Malone* addressed the issue of whether governmental entities, such as Franklin County and the members of its Fiscal Court, which unquestionably have governmental immunity, waived their immunity at least to the extent of the funds they placed in a self-insurance program. The question before us in this case is not whether the public school boards waived their immunity by participating in KSBIT. *Malone* holds that public entities with governmental immunity do not lose that immunity when they participate in a self-insurance fund. *Malone* does not hold that the administrators of the self-insurance fund acquire the governmental immunity of their patrons.

We are satisfied that from the language of the Trust Agreement, the seminal instrument creating KSBIT, that the KSBIT Board was not created by the local public school boards that participate in KSBIT's insurance programs. From our conclusion that the KSBIT Board is not the offspring of local public school boards, it follows that the KSBIT Board does not have the governmental immunity accorded to those governmental bodies. We next consider the second prong of the *Comair* analysis: whether the KSBIT Board serves a function integral to state government.

12

## B. The KSBIT Board does not serve a function integral to state government.

KSBIT describes its role in providing insurance for public school boards as a governmental function because Kentucky school boards are mandated to carry workers' compensation insurance and property insurance, and they can satisfy that obligation by participating in KSBIT. We do not agree with that analysis.

As we held in *Yanero v. Davis*, "[l]ocal school boards fulfill a governmental function of state government by providing public education within a particular geographical area." 65 S.W.3d 510, 526 (Ky. 2001) (quoting *Cullinan v. Jefferson County*, 418 S.W.2d 407, 408 (Ky. 1967)). To be more precise in light of *Comair*'s two-prong test, we would say that local public school boards perform an *integral state function* by providing education for children and others situated within their respective geographic areas.

However, the fact that local school boards, like private employers, must have workers' compensation coverage and other kinds of insurance does not transform the acquisition of that insurance into a governmental function. Providing or obtaining insurance, even though a self-insurance program, is not providing education. Innumerable things necessarily contribute to the ability of the school boards to fulfill their governmental function, but the entities that supply those things do not themselves perform an integral state function.

To determine whether an entity such as KSBIT performs an integral state function, we examine two elements: 1) "whether its function is 'governmental'

13

as opposed to proprietary," and 2) "whether it is a matter of 'statewide' concern." *Coppage*, 459 S.W.3d at 862.

Providing employers with workers' compensation coverage or managing a self-insurance fund that enables employers to meet their workers' compensation requirement is not a function integral to state government; it is not a governmental function at all. Workers' compensation coverage through insurance and self-insurance pools is conducted almost exclusively by the private sector and is clearly a proprietary function. Even if KSBIT could be said to serve the public purpose of serving public school boards, as we forewarned in *Coppage*, "not every 'public purpose' qualifies as an 'integral state function.' If that were the case, sovereign immunity would extend far beyond its current constraints, reaching virtually every local government agency fulfilling a perceived 'public purpose.'" *Id.*

The KSBIT Board is not an integral part of state government; it does not fit "within regular patterns of administrative organization and structure" of state government. *Berns*, 801 S.W.2d at 332 ("[I]mmunity should extend only to 'departments, boards or agencies that are such integral parts of state government as to come within regular patterns of administrative organization and structure.'") (quoting *Kentucky Region Eight v. Commonwealth*, 507 S.W.2d 489, 491 (Ky. 1974)).

Performing the same business activity that is ordinarily accomplished by private individuals or business corporations is not engaging in a governmental function. *Yanero*, 65 S.W.3d at 519–520 (citing 83 L.Ed. 794, 804-05). KSBIT

14

"performs substantially the same functions as any private business engaged in the [insurance] business." *Berns*, 801 S.W.2d at 331.

KSBIT cites *Breathitt County Board of Education v. Prater*, 292 S.W.3d 883 (Ky. 2009), as an example where a service in aid of the educational mission of a local school board was deemed to be the performance of a governmental function. The local school board in *Prater* provided on-site housing to the person serving as night watchman and groundskeeper. A social visitor to the property was injured and sued the school board. The visitor argued that the school board was not immune from suit because providing on-campus housing was proprietary in nature. We analyzed the facts under the theory that "education is an integral aspect of state government and that activities in direct furtherance of education will be deemed governmental rather than proprietary." *Id.* at 887 (citing *Yanero*, 65 S.W.3d 510; *Withers v. University of Kentucky*, 939 S.W.2d 340 (Ky.1997); *Autry v. Western Kentucky University*, 219 S.W.3d 713 (Ky. 2007)). We resolved the issue in favor of immunity, reasoning that the school board provided the groundskeeper with housing, not in the proprietary role of commercial landlord, "but to further its educational mission by protecting the facilities where that mission is carried out." *Id.* at 888. In other words, the watchman/groundskeeper was not housed on campus so that the school board could rent out the house as a proprietary landlord; the watchman/groundskeeper was housed on campus so that he was always available to protect school property.

15

The Board argues that, like the housing provided in *Prater*, KSBIT was not created for the purpose of participating in the commercial insurance market, but was instead created to provide local school boards with cheaper insurance coverage than was otherwise available. The difference between *Prater* and the present case is clear. A private landlord could not serve the school board's need to have a night watchman housed on the school grounds; obviously only the school board, as the owner of the property, could do that. Requiring (or allowing) the watchman to live on school property did not put the school board in the proprietary role of a landlord. In contrast to that, KSBIT was effectively a participant in the insurance market, providing its members the same "product" available from and ordinarily provided by non-governmental entities.

Finally, we note that KSBIT's function is not a matter of statewide concern. We do not imply that KSBIT's service is not important. But, the analysis is to determine if it performs a function integral to state government. Unlike the airport board in *Comair* which provides essential air transport infrastructure which cannot be provided by private entities to meet Kentucky's commercial, industrial, and public transportation needs, KSBIT provides insurance protection readily available from a number of private sources. KSBIT compares more closely to the substance abuse programs provided by the area development district in *Kentucky River Foothills Development Council, Inc. v. Phirman*, 504 S.W.3d 11 (Ky. 2016), which operates for the benefit of a discrete group.

16

KISBIT does not satisfy the elements required for concluding it serves an integral state function.

### III.  CONCLUSION

For reasons stated above, we affirm the order of the Franklin Circuit Court's denying summary judgment to the KSBIT Board based upon the grounds of governmental immunity.  This case is remanded to Franklin Circuit Court for further proceedings consistent with this decision.

All sitting.  All concur.

COUNSEL FOR APPELLANT:

Douglas L. McSwain
William Craig Robertson III
Sharon Leslie Gold
Courtney Ross Samford

Wyatt, Tarrant & Combs, LLP
250 West Main Street, Suite 1600
Lexington, KY 40507-1746

COUNSEL FOR APPELLEE JOSEPH N. POPE JR, DEPUTY REHABILITATOR
OF THE KENTUCKY SCHOOL BOARDS INSURANCE TRUST PROPERTY AND
LIABILITY SELF-INSURANCE FUND, AND JOSEPH N. POPE, JR. DEPUTY
REHABILITATOR OF THE KENTUCKY SCHOOL BOARDS
INSURANCE TRUST WORKERS' COMPENSATION SELF-INSURANCE FUND:

Perry Mack Bentley
Todd Smith Page
Stoll, Keenon & Ogden, PLLC
300 West Vine Street, Suite 2100
Lexington, KY 40507-1801

Justin Drew Clark
Stoll, Keenon & Ogden, PLLC

2000 PNC Plaza
500 West Jefferson Street
Louisville, KY 40202

Paul C. Harnice
Sarah Jackson Bishop
Stoll, Keenon & Ogden, PLLC
201 West Main Street, Suite A
P.O. Box 5130
Frankfort, KY 40601

Barry Lee Dunn
Public Protection Cabinet
Office of Legal Services

Emily Warf
Fultz Maddox Dickens, PLC
101 S. 5th Street, Suite 2700
Louisville, KY 40202

COUNSEL FOR AMICUS CURIAE, KENTUCKY ASSOCIATION OF COUNTIES, INC.:

Timothy A. Sturgill
Kentucky Association of Counties, Inc.
General Counsel
400 Englewood Dr.
Frankfort, KY 40601