RENDERED: APRIL 10, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0159-MR

J&G HOLDINGS, LLC; GEORGE
BEGLEY; AND JAMES BEGLEY                                          APPELLANTS


                        APPEAL FROM PERRY CIRCUIT COURT
v.                      HONORABLE ALISON C. WELLS, JUDGE
                        ACTION NO. 22-CI-00158


DAVID WELLS                                                        APPELLEE


                                OPINION
                               AFFIRMING

                          ** ** ** ** **

BEFORE: ACREE, ECKERLE, AND KAREM, JUDGES.

KAREM, JUDGE: Appellants appeal from the Perry Circuit Court's grant of

summary judgment to Appellee David Wells ("Wells"), wherein the circuit court

concluded that, under the contractual language of a Stock Redemption and

Resignation Agreement, Appellants were required to reimburse Wells for two-

thirds of the attorneys' fees he incurred in defending a lawsuit involving surface

coal mining. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

B&W Resources, Inc. ("B&W"), was a Kentucky corporation owned equally by three shareholders: James Begley ("J. Begley"), George Begley ("G. Begley," and together with J. Begley, the "Begleys"), and Wells. The circuit court described the events leading up to this dispute as follows:

> In October of 2002, B&W and M&T Logging, Inc. [("M&T")] entered into a contract mining agreement regarding a surface mining permit owned by M&T with respect to mineral property located in Clay County. By the end of October, M&T had determined that the permitted reserves were insufficient to justify the capital expense of continuing mining and agreed to reclaim its surface disturbance to a Phase I bond release, in exchange for M&T's release of B&W from any further liability under the Contract Mining Agreement. B&W completed the Phase I reclamation before the end of November and vacated the property.

> In 2003, the United States Army Corps of Engineers [("USACE")] issued a non-compliance against M&T due to its failure to obtain a 404 Clean Water Act Permit [("404 Permit")], by which M&T would be required to restore the two streambeds situated on the permitted property.

> In 2008, after the assets of B&W had been divided between the Begleys and Wells, as part of the Redemption Agreement [(as hereinafter defined)], Wells sold the stock of B&W to the Liperote family.

> In 2011, M&T filed suit in the Perry Circuit Court against B&W to recover its costs of performing the 404 Permit, issued to it in 2006 [(the "M&T [L]itigation")].

-2-

In 2012, Wells entered into an Agreement with B&W, by which he agreed to defend the M&T suit, to indemnify B&W from any liability thereunder, and was assigned all the rights of B&W under the Redemption Agreement.

The M&T suit was tried by jury in this Court in February of 2018.  A jury verdict was entered in favor of B&W and, thereafter, the Judgment entered thereon was appealed.  In 2021[,] the Court of Appeals affirmed the Perry Circuit Court judgment.  This action was filed in 2022 by Wells to recover the defense costs and attorneys' fees he incurred in defending the M&T [L]itigation.

The Redemption Agreement [(the "Redemption Agreement")] includes the following contested language:

5.2 Indemnity by Seller and Holdings.  Seller and Holdings[1] shall jointly and severally indemnify and hold the Company harmless from and against, and shall pay to the Company the full amount of, any actual loss, claim, damage, liability or expense (including reasonable attorneys' fees, but excluding any special, exemplary, punitive or consequential damages, or any damages other than, or in addition to, actual damages) resulting to the Company, either directly or indirectly, from: (a) any material inaccuracy in any representation or warranty, or any breach of any covenant or agreement, by Seller contained in this Agreement and (b) any liability for any fee or commission owed to a broker or finder pursuant to an agreement signed by Seller with respect to the transactions contemplated by this Agreement.  **Without limiting the foregoing, Seller and Holdings hereby agree jointly and severally to pay promptly the following liabilities of the Company upon receipt of written notice and evidence from the Company of such liabilities**: (a) two-thirds (2/3's) of all liability

---

[1] In the Redemption Agreement, B&W Resources, Inc. is referred to as the "Company," the Begleys are referred to as "Sellers," Wells is referred to as the "Remaining Shareholder," and J&G Holdings LLC is referred to as "Holdings."

associated with the reclamation of the surface mining operation commonly known as the Chavies Job which operated by the Company under that certain surface coal mining permit known as KCNREP Permit No. 897-0478 and all liability to the Nature Conservancy arising from that same Chavies job; (b) **two-thirds (2/3's) of all liability of the Company associated with the existing notice of non-compliance on the M&T Logging Mining Permit**; (c) two-thirds (2/3's) of all liability of the Company associated with the pending civil action in Perry Circuit Court relating to a truck accident; (d) two-thirds (2/3's) of all liability of the Company associated with the pending civil action with Buckhorn Resources, LLC over a land title dispute; and (e) **two-thirds (2/3) of all reasonable costs and expenses incurred by the Company in defending lawsuits and otherwise defending against the foregoing liabilities, including without limitation reasonable attorneys' fees**, provided however, that no settlement shall be reached or made or any such cost or expense incurred without the prior written approval Seller. **The joint and several obligations of Seller and Holdings under this section 5.2 shall survive the execution and delivery of this Agreement**.

(Emphasis added).

Wells contends that [the Begleys'] promise to pay two-thirds (2/3) of "all liability" of B&W "associated with the existing notice of non-compliance on the M&T Logging Permit," includes the costs and attorneys' fees he incurred in defending the M&T [L]itigation. He argues that his defense of the M&T [L]itigation, which was filed to recover M&T's cost of performing the 404 Permit, was a matter associated with the M&T non-compliance identified in the Redemption Agreement. The Begleys, on the other hand, argue that the language of the Redemption Agreement is expressly limited to the M&T non-compliance and, once it was abated by the issuance to M&T of the 404 Permit, there could be no additional

liability of B&W to M&T related to the non-compliance which they would be required to indemnify.

In its order granting Wells summary judgment, the circuit court determined that "the language of the Redemption Agreement is not ambiguous, and that its meaning can be discerned without resort to extrinsic evidence." Thus, the circuit court determined that:

> the Redemption Agreement phrase "all liability of the Company associated with the existing notice of non-compliance on the M&T Logging Permit" includes matters other than its abatement (for which B&W was not legally liable) that would, otherwise logically flow from, be related to, or connected with it, *i.e.* be associated with it, including most obviously, M&T's suit against B&W to recover its costs of performing the 404 Permit. The subject matter of the non-compliance was the 404 Permit, and the potential liability to B&W was the cost of its performance.

This appeal followed.

We will discuss further facts as they become relevant.

## ANALYSIS

### 1. Statement of Preservation

As a preliminary matter, Appellants contend that Wells's brief does not contain a statement of preservation as required by Kentucky Rule of Appellate Procedure ("RAP") 32(B)(4) and that we should thus not consider the brief. However, RAP 32(B)(4) states the following: "An appellee's response brief must contain the following sections: . . . An argument conforming to appellee's

-5-

counterstatement of points and authorities and to the requirements for appellant's argument." Wells provided an argument conforming to the foregoing and more than met the Kentucky Rules of Appellate Procedure's requirements. Appellants' argument is not well-taken by this Court.

## 2. Standard of Review

"The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is 'no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.'" *Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010) (quoting Kentucky Rule of Civil Procedure ("CR") 56.03). Indeed, "[a] motion for summary judgment presents only questions of law[.]" *Patton v. Bickford*, 529 S.W.3d 717, 723 (Ky. 2016). Therefore, "[o]ur review is *de novo*, and we afford no deference to the trial court's decision." *Id.* Moreover, "[t]he interpretation of a contract, including determining whether a contract is ambiguous, is a question of law to be determined *de novo* on appellate review." *Kentucky Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 695 (Ky. 2016) (citation omitted).

## 3. Discussion

Appellants first argue that the circuit court erred when it found that Section 5.2 of the Redemption Agreement required Appellants to reimburse Wells

for two-thirds of the expenses he incurred in defending against the M&T Litigation. "In interpreting a contract, we first determine as a matter of law whether the contract is ambiguous. A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms." *Board of Trustees of Kentucky School Boards Insurance Trust v. Pope*, 528 S.W.3d 901, 906 (Ky. 2017) (citation omitted). "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002) (citations omitted).

In this case, we agree with the trial court that the Redemption Agreement's language was unambiguous. Of note is that nowhere in Section 5.2 of the Redemption Agreement did the parties limit Appellants' liability "for the existing notice of non-compliance on the M&T Logging Mining Permit" to the non-compliance issued by the KDMRE. If Appellants had wished to limit their liability to the cost of abating the KDMRE notice of non-compliance, it should have done so explicitly, as Appellants had notice that the USACE had only issued a conditional 404 Permit that imposed additional mitigation requirements approximately three (3) months prior to their signing the Redemption Agreement.

Rather, Appellants agreed to the use of an incredibly broad phrase – "associated with" – to describe the parameters of its liability. Merriam-Webster's

Online Dictionary defines "associated" as "related, connected, or combined together." *See* MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/associated (last accessed Mar. 18, 2026). Because the non-compliance was directly tied to the 404 Permit, the *performance* of the obligations surrounding the receipt of the 404 Permit by the USACE was very much "associated" with any non-compliance. Consequently, Wells's defense of the M&T Litigation, which was filed in part to recover M&T's cost of performing the 404 Permit,[2] was a matter "associated with," "related, connected, or combined" with the non-compliance identified in the Redemption Agreement.

Moreover, we emphasize that, contrary to Appellants' claim that the liabilities to comply with the Conditional Permit were unknown to them upon execution of the Redemption Agreement, the liabilities were clear upon USACE's issuance of the Conditional Permit in February 2007, well before the parties' execution of the Redemption Agreement in May 2007. We affirm as to this issue.

Appellants next argue that the circuit court abused its discretion in revising its interlocutory ruling on Wells's CR 41.01(2) motion to voluntarily dismiss certain counts without prejudice. We agree with Wells that the argument Appellants raise on appeal—that they were prejudiced by the circuit court's

---

[2] *M&T Logging, Inc. v. B&W Resources, Inc.*, No. 2018-CA-000434-MR, 2020 WL 2510920, at *1 (Ky. App. May 15, 2020). We cite this case pursuant to RAP 41(A).

revision of its prior interlocutory order—was never raised before the trial court and was not properly preserved for this Court's review.

On October 14, 2024, the circuit court entered a final and appealable judgment ruling on all remaining pending motions. These rulings included sustaining Wells's motion for summary judgment dismissing Appellants' unjust enrichment counterclaims based on the applicable statute of limitations, denying Appellants' motion for leave to file an amended answer and to remove their counterclaims, and granting Wells's motion to voluntarily dismiss under CR 41 certain counts contained in his complaint. The circuit court specifically noted that neither Wells nor Appellants were prejudiced by the dismissal of the counts.

On October 23, 2024, Appellants and Begley Properties filed a CR 59.05 motion to alter, amend, or vacate the October 14 final judgment, asserting only that Begley Properties was an improper party to the judgment since it was not a party to the Redemption Agreement and could not be liable thereunder. Appellants did not argue that they were prejudiced by the circuit court's revision of its prior interlocutory ruling. On November 14, 2024, Appellants and Begley Properties re-noticed their CR 59.05 motion from November 22 to instead be heard on December 13.

On December 11, 2024—six weeks after their initial filing and two days before the hearing—Appellants and Begley Properties attempted to

supplement the CR 59.05 motion, asserting only that the October 14 final judgment contravened the order entered by the circuit court on September 12, since both orders addressed Wells's CR 41.01(2) motion. Appellants again did not argue that the circuit court's revision of its prior interlocutory ruling on Wells's CR 41.01(2) motion prejudiced them or that the circuit court abused its discretion in changing its prior interlocutory ruling. They simply argued that the circuit court should alter the final judgment by deleting Paragraphs 1-3 thereof. Thereafter, on January 15, 2025, the circuit court amended the final judgment to remove Begley Properties and denied Appellants' supplement to its CR 59.05 motion as untimely.

Appellants do not allege that the circuit court erred in denying their attempt to "supplement" their 59.05 motion as untimely. Moreover, we will not reverse on appeal alleged errors not raised before the circuit court. Indeed:

> It has long been this Court's view that specific grounds not raised before the trial court, but raised for the first time on appeal will not support a favorable ruling on appeal. Most simply put, "[a] new theory of error cannot be raised for the first time on appeal." *Springer v. Commonwealth*, 998 S.W.2d 439, 446 (Ky. 1999) (discussing specifically a directed verdict issue); *see, e.g.*, *Harrison v. Leach*, 323 S.W.3d 702, 708-09 (Ky. 2010); *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009) ("More importantly, this precise argument was never made in the trial court. An appellate court 'is without authority to review issues not raised in or decided by the trial court.'") (quoting *Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989)); *Combs v. Knott County Fiscal Court*, 283 Ky. 456, 141 S.W.2d 859, 860 (1940) ("[A]ppellant is precluded from

-10-

raising that question on appeal because it was not raised or relied upon in the court below. It is an unvarying rule that a question not raised or adjudicated in the court below cannot be considered when raised for the first time in this court.").

*Fischer v. Fischer*, 348 S.W.3d 582, 588 (Ky. 2011), *abrogated on other grounds by Nami Resources Company, L.L.C. v. Asher Land and Mineral, Ltd.*, 554 S.W.3d 323, 338-39 n.10 (Ky. 2018). Because Appellants did not preserve for this Court to review the issue of whether the circuit court abused its discretion and prejudiced them when it revised its prior interlocutory ruling in entering the final judgment, we affirm the circuit court's judgment.

## **CONCLUSION**

For the foregoing reasons, we affirm the Perry Circuit Court's order.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Michael J. Gartland
Lexington, Kentucky

James R. Golden
Pineville, Kentucky

BRIEF FOR APPELLEE:

Shelby C. Kinkead, Jr.
Wayne F. Collier
Lexington, Kentucky

Randall S. May
Hazard, Kentucky